Jeremy E. Shulman (# 257582)
  jshulman@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN,
  CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Tel: (626) 535-1900 | Fax: (626) 577-7764

Attorneys for Defendant
WELLS FARGO BANK, N.A.,
("Wells Fargo")

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANNAH POYORENA, an individual, and on behalf of the Estate of Lorraine G. Poyorena, deceased, and SARAH REBEKAH FIORITO aka AMY FIORITO, an individual;,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,; and Does 1 – 100, inclusive<br><br>Defendants. | CASE NO.: 2:14-cv-00683-GAF-E<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: April 7, 2014<br>Time: 9:30 a.m.<br>Ctrm: 740<br><br>[Assigned to the Hon. Gary A. Feess] |

**TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on April 7, 2014, at 9:30 a.m., in Courtroom 740 of the above-entitled court, located at 255 East Temple Street Los Angeles, CA 90012-3332, the Honorable Gary A. Feess, District Judge of the United States District Court presiding, defendant WELLS FARGO BANK, N.A., ("Wells Fargo"), will move pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure to dismiss the first through fourth claims of plaintiffs' complaint.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Grounds for the motion to dismiss are:

**1.      First Claim for Relief: Negligent Misrepresentation**

Plaintiffs fail to state a claim for relief for negligent misrepresentation because: (i) the claim is preempted by the Home Owners' Loan Act (HOLA); (ii) the Estate, plaintiffs as trust beneficiaries, and plaintiffs individually, all lack standing; (iii) the claim impermissibly seeks to enforce HAMP; (iv) modification activity regarding Lorraine Poyorena terminated upon her death; (v) plaintiffs as nonparties cannot modify a contract; (vi) Wells Fargo owed no tort duty of care; (vii) the complaint lacks a false representation or justifiable reliance; and (viii) plaintiffs fail to plead recoverable damage.

**2.      Second Claim for Relief: Negligence/Negligent Infliction of Emotional Distress**

Plaintiffs fail to state a claim for relief for negligence/negligent infliction of emotional distress because: (i) the claim is preempted by HOLA; (ii) the Estate, plaintiffs as trust beneficiaries, and plaintiffs individually, all lack standing; (iii) the claim impermissibly seeks to enforce HAMP; (iv) modification activity regarding Lorraine Poyorena terminated upon her death; (v) plaintiffs as nonparties cannot modify a contract; (vi) Wells Fargo owed no tort duty of care; (vii) emotional distress cannot be recovered by the deceased or a trust, and is not available absent physical injury; and (viii) plaintiffs fail to plead recoverable damage.

**3.      Third Claim for Relief: California Business & Professions Code 17200**

Plaintiffs fail to state a claim for relief under California Business & Processions Code section 17200 because: (i) the claim is preempted by HOLA; (ii) the Estate, plaintiffs as trust beneficiaries, and plaintiffs individually, all lack standing; (iii) the claim impermissibly seeks to enforce HAMP; (iv) modification activity regarding Lorraine Poyorena terminated upon her death; (v) plaintiffs as

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  nonparties cannot modify a contract; (vi) Wells Fargo owed no tort duty of care;

2  and (vii) plaintiffs lack standing without injury in fact.

3      **4.    Fourth Claim for Relief: Promissory Estoppel**

4      Plaintiffs fail to state a claim for relief for promissory estoppel because: (i)

5  the claim is preempted by HOLA; (ii) the Estate, plaintiffs as trust beneficiaries,

6  and plaintiffs individually, all lack standing; (iii) the claim impermissibly seeks to

7  enforce HAMP; (iv) modification activity regarding Lorraine Poyorena terminated

8  upon her death; (v) plaintiffs as nonparties cannot modify a contract; (vi) the

9  complaint does not allege a clear and unambiguous promise or reasonable reliance;

10 and (vii) plaintiffs fail to plead recoverable damage.

11     The motion is based on this notice, the memorandum of points and

12 authorities, the complaint, the request for judicial notice, and on defendant's

13 argument at the hearing on the motion.

14     This motion is made following the conference of counsel pursuant to Local

15 Rule 7-3, which took place on January 30, 2014.

16

17                                    Respectfully submitted,

18 Dated:  March 7, 2014             ANGLIN, FLEWELLING, RASMUSSEN,
                                          CAMPBELL & TRYTTEN LLP
19

20
                                    By:  ____/s/ Jeremy E. Shulman____
21                                       Jeremy E. Shulman
22                                       jshulman@afrct.com
                                         Attorneys for Defendant
23                                       WELLS FARGO BANK, N.A.

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES.................................................. 1

1.   INTRODUCTION................................................................................................ 1

2.   SUMMARY OF THE COMPLAINT ................................................................ 1

    A.   The Loan And Merger Of World Savings Into Wells Fargo. ............... 1

    B.   Wells Fargo Offers A Loan Modification Trial Period Plan (TPP) To Lorraine Poyorena.................................................................. 2

    C.   Hannah Poyorena Attempts To Accept the Loan Modification Offer Made To Lorraine Poyorena. ............................................................. 3

3.   THE COMPLAINT SUFFERS FROM STANDING AND OTHER DEFECTS REGARDING NAMED PLAINTIFFS.......................................... 4

4.   THE HOME OWNERS' LOAN ACT PREEMPTS PLAINTIFFS' STATE LAW CLAIMS. ................................................................................... 6

    A.   As A Federally-Chartered Savings Bank, World Savings Bank, FSB Operated Under HOLA.................................................................. 6

    B.   Regulations Promulgated By The OTS Preempt Any State Law That Affects Lending ........................................................................... 7

    C.   State Laws Preempted by HOLA........................................................... 8

    D.   The Application of HOLA Preempts Each State Law Claim Against Wells Fargo. .............................................................................. 9

5.   EACH CLAIM RUNS AFOUL OF WELL-ESTABLISHED CASE LAW THAT HAMP IS NOT PRIVATELY ACTIONABLE..................... 11

6.   EACH CLAIM FAILS BECAUSE THE MODIFICATION OFFER TO LORRAINE TERMINATED ON HER PASSING, AND A CONTRACT CANNOT BE MODIFIED BY A NONPARTY. .................. 12

7.   THE TWO NEGLIGENCE CLAIMS FAIL ON NUMEROUS GROUNDS, INCLUDING THE LACK OF A DUTY OF CARE (FIRST AND SECOND CLAIMS). ............................................................ 14

    A.   The Weight Of Authority Confirms That Wells Fargo Owed No Duty Of Care In Processing A Loan Modification Application......... 14

    B.   As To Negligent Misrepresentation, The Complaint Lacks Allegations Supporting A False Representation And Justifiable Reliance.............................................................................................. 16

    C.   Emotional Distress Recovery Fails On Numerous Grounds. ............. 17

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

D.    The Complaint Lacks Sufficient Causation And Damage Allegations On The Mere Acceptance Of Loan Payments.................18

8.    PLAINTIFFS ALSO CANNOT RECOVER FOR UNFAIR COMPETITION (THIRD CLAIM). ...........................................................20

9.    PLAINTIFFS CANNOT SUPPORT THE PROMISSORY ESTOPPEL ELEMENTS (FOURTH CLAIM). .........................................21

10.    *MCGARVEY V. J.P. MORGAN* IS DISTINGUISHABLE AND DOES NOT SUPPORT THE VIABILITY OF AN ACTIONABLE CLAIM. .......23

11.    CONCLUSION .........................................................................................25

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Aleem v. Bank of Am.*,
2010 U.S. Dist. LEXIS 11944 (C.D. Cal. Feb. 9, 2010) .............................. 11, 12

*Allen v. Wright*,
468 U.S. 737 (1984) ....................................................................................... 4, 5

*Armstrong v. Chevy Chase Bank, FSB*,
2012 U.S. Dist. LEXIS 144125 (N.D. Cal. Oct. 3, 2012) ................................ 15

*Ashby v. Wells Fargo Bank, N.A.*,
2012 U.S. Dist. LEXIS 69693 (S.D. Tex. May 18, 2012) ............................... 14

*Ashcroft v. Iqbal*,
129 U.S. 1937 (2009) ......................................................................................... 5

*Badame v. JP Morgan Chase Bank*, N.A.,
2014 U.S. Dist. LEXIS 22164, at *18 (C.D. Cal. Feb. 13, 2014) ..................... 14

*Baldin v. Wells Fargo Bank, N.A.*,
2013 U.S. Dist. LEXIS 29728 (D. Or. Feb. 12, 2013) ..................................... 19

*Ballard v. Bank of Am., N.A.*,
2013 U.S. Dist. LEXIS 159428 (S.D. W. Va. Nov. 7, 2013) ........................... 19

*Bank of America v. City & County of San Francisco*,
309 F.3d 551 (2002) ........................................................................................... 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................... 6

*Biggins v. Wells Fargo & Co.*,
266 F.R.D. 399 (N.D. Cal. 2009) ..................................................................... 10

*Cabanillas v. Wachovia Mortg.*,
2012 U.S. Dist. LEXIS 39270 (C.D. Cal. Mar. 20, 2012) ............................... 22

*Caso v. Hartford Cas. Ins. Co.*,
2008 U.S. Dist. LEXIS 36428 (E.D. Cal. May 2, 2008) .................................. 18

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Curcio v. Wachovia Mortg. Corp.*,
    2009 WL 3320499 (S.D. Cal. Oct. 14, 2009)...................................................... 10

*DeLeon v. Wells Fargo Bank, N.A.*,
    2011 U.S. Dist. LEXIS 8296 (N.D. Cal. Jan. 28, 2011) .................................... 21

*DeLeon v. Wells Fargo Bank, N.A.*,
    729 F. Supp. 2d 1119 (N.D. Cal. June 9, 2010) ................................................ 8

*Deschaine v. IndyMac Mortg. Servs.*,
    2013 U.S. Dist. LEXIS 163203 (E.D. Cal. Nov. 15, 2013) .............................. 15

*Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*,
    458 U.S. 141 (1982) ........................................................................................... 7

*Glendale Fed. Sav. & Loan Ass'n v. Fox*,
    459 F. Supp. 903 (C.D. Cal. 1978)...................................................................... 7

*Gonzales v. Wells Fargo Bank, N.A.*,
    2012 U.S. Dist. LEXIS 154851 (N.D. Cal. Oct. 29, 2012).............................. 15

*Gorton v. Wells Fargo Bank NA*,
    2012 U.S. Dist. LEXIS 168158 (C.D. Cal. Nov. 27, 2012) ............................... 9

*Graybill v. Wells Fargo Bank, N.A.*,
    2013 U.S. Dist. LEXIS 34322 (N.D. Cal. Mar. 12, 2013) .............................. 15

*Guerrero v. Wells Fargo Bank, N.A.*,
    2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010).......................... 2, 8, 23

*Guralnik v. MBNA Am. Bank, N.A.*,
    2005 U.S. Dist. LEXIS 33717 (N.D. Cal. Aug. 31, 2005)............................... 16

*Hoffman v. Bank of America, N.A.*,
    2010 U.S. Dist. LEXIS 70455 (N.D. Cal. June 30, 2010) .......................... 11, 20

*In re Saunders*,
    2008 Bankr. LEXIS 781 (Bankr. E.D. Pa. Mar. 17, 2008) .............................. 19

*Kaplan v. Wells Fargo Bank N.A.*,
    2013 U.S. Dist. LEXIS 109023 (C.D. Cal. July 30, 2013) .................... 8, 10, 11

*Lawther v. OneWest Bank, FSB*,
    2012 U.S. Dist. LEXIS 12062 (N.D. Cal. Feb. 1, 2012).................................. 19

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Mata v. Wells Fargo Bank, N.A.*,
   2013 U.S. Dist. LEXIS 108197 (C.D. Cal. July 31, 2013) .................................. 8

*McGarvey v. JP Morgan Chase Bank, N.A.*,
   2013 U.S. Dist. LEXIS 147542 (E.D. Cal. Oct. 10, 2013) ................... 23, 24, 25

*Mlejnecky v. Olympus Imaging Am., Inc.*,
   2011 U.S. Dist. LEXIS 42333 (E.D. Cal. Apr. 18, 2011) ................................ 16

*Nastrom v. JPMorgan Chase Bank, N.A.*,
   2012 U.S. Dist. LEXIS 162958 (E.D. Cal. Nov. 13, 2012) .............................. 22

*Naulty v. GreenPoint Mortg. Funding, Inc.*,
   2009 U.S. Dist. LEXIS 79250 (N.D. Cal. Sept. 3, 2009) .................................... 9

*Neu v. Terminix Int'l, Inc.*,
   2008 U.S. Dist. LEXIS 32844 (N.D. Cal. Apr. 8, 2008) .................................. 20

*Newgent v. Wells Fargo Bank, N.A.*,
   2010 U.S. Dist. LEXIS 18476 (S.D. Cal. Mar. 2, 2010)....................... 19, 22, 23

*Parker v. Dean Transp.*, Inc.,
   2013 U.S. Dist. LEXIS 184386, at *33, fn. 16 (C.D. Cal. Oct. 15, 2013)......... 18

*Sato v. Wachovia Mortg., FSB*,
   2011 U.S. Dist. LEXIS 75418 (N.D. Cal. July 13, 2011) ................................ 10

*Settle v. World Savings Bank, FSB*,
   2012 U.S. Dist. LEXIS 4215 (C.D. Cal. Jan. 11, 2012).................................... 15

*Sharma v. Wachovia*,
   2011 U.S. Dist. LEXIS 1736 (E.D. Cal. Jan. 6, 2011)...................................... 10

*Silvas v. E*Trade Mortgage Corp.*,
   514 F.3d 1001 (9th Cir. 2008)....................................................................... 8, 9

*Sullivan v. JP Morgan Chase Bank, NA*,
   725 F. Supp. 2d 1087 (E.D. Cal. 2010)........................................................... 15

*Taguinod v. World Sav. Bank, FSB*,
   755 F. Supp. 2d 1064 (C.D. Cal. Dec. 2, 2010) ................................................ 1

*Torres v. Litton Loan Servicing LP*,
   2011 U.S. Dist. LEXIS 4616 (E.D. Cal. Jan. 18, 2011)................................... 11

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Villa v. Wells Fargo Bank, N.A.*,
2010 U.S. Dist. LEXIS 23741, at **6-7 (S.D. Cal. Mar. 15, 2010) .................. 11

*Williams v. Wells Fargo Bank, NA*,
2014 U.S. Dist. LEXIS 17215 (C.D. Cal. Jan. 27, 2014)..................................... 8

*Zarif vs. Wells Fargo Bank, N.A.*,
2011 U.S. Dist. LEXIS 29867, at **8-9 (S.D. Cal. Mar. 23, 2011) .................. 10

**STATE CASES**

*Aceves v. U.S. Bank, N.A.*,
192 Cal. App. 4th 218 (2011)............................................................................. 21

*Branch v. Homefed Bank*,
6 Cal. App. 4th 793, 8 Cal. Rptr. 2d 182 (1992) ............................................... 18

*Butler-Rupp v. Lourdeaux*,
134 Cal. App. 4th 1220 (2005)........................................................................... 18

*Daro v. Superior Court*,
151 Cal. App. 4th 1079 (2007)........................................................................... 20

*Eddy v. Sharp*,
199 Cal. App. 3d 858 (1988) .............................................................................. 14

*Estate of Baird*,
135 Cal. App. 2d 333 (1955) ................................................................................ 4

*Estate of Bowles*,
169 Cal. App. 4th 684, 691 (2008).................................................................... 5, 6

*Estate of Heigho*,
186 Cal. App. 2d 360 (1960) ................................................................................ 4

*Estate of Watts*,
162 Cal. App. 3d 1160 (1984)........................................................................ 12, 13

*Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Assn.*,
52 Cal. App. 3d 484 (1975) ................................................................................ 16

*Grieve v. Mullaly*,
211 Cal. 77 (1931) ............................................................................................. 13

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Hall v. Time, Inc.*,
    158 Cal. App. 4th 847 (2008)...................................................................... 20

*Jolley v. Chase Home Finance, LLC*,
    213 Cal. App. 4th 872 (2013)...................................................................... 15

*Khoury v. Maly's of California, Inc.*,
    14 Cal. App. 4th 612 (1993)........................................................................ 20

*Korea Supply Company v. Lockheed Martin Corporation*,
    29 Cal. 4th 1134 (2003)............................................................................... 20

*Laks v. Coast Fed. Sav. & Loan Assn.*,
    60 Cal. App. 3d 885, 888-889, 892-893 (1976) .................................... 15, 21

*Mabry v. Superior Court*,
    185 Cal. App. 4th 208 (2010)...................................................................... 20

*Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*,
    48 Cal. 3d 583 (1989).................................................................................. 14

*Nungaray v. Litton Loan Servicing, LP*,
    200 Cal. App. 4th 1499 (2011).................................................................... 22

*Nymark v. Heart Fed. Savs. & Loan Ass'n*
    231 Cal. App. 3d 1089, 1096 (1991)........................................................... 14

*Pillsbury v. Karmgard*,
    22 Cal. App. 4th 743 (1994).......................................................................... 5

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998)................................................................................... 16

*Raedeke v. Gibralter Savings and Loan, Assoc.*,
    10 Cal. 3d 665 (1974).................................................................................. 21

*Software Design and Application Ltd. v. Hoeffer & Arnolt Inc.*,
    49 Cal. App. 4th 472 (1996).................................................................. 14, 15

*Stansfield v. Starkey*,
    220 Cal. App. 3d 59 (1990)......................................................................... 16

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
    2 Cal. App. 4th 153 (1991).......................................................................... 17

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*US Ecology, Inc. v. State of California*,
129 Cal. App. 4th 887 (2005) ................................................................... 23

*Weiss v. Washington Mutual Bank*,
147 Cal. App. 4th 72 (2007) ...................................................................... 9

**FEDERAL STATUTES**

12 U.S.C. § 1461, *et seq.* .......................................................................... 6

12 U.S.C. § 1464(a) ................................................................................... 7

12 U.S.C § 1701j-3(d) .............................................................................. 19

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 .............................................................. 20

Cal. Bus. & Prof. Code § 17200, and (4) ................................................... 4

Cal. Bus. & Prof. § 17204 ........................................................................ 20

Cal. Civ. Proc. Code § 377.34 .................................................................. 18

**RULES**

Fed. R. Civ. P. 8 ......................................................................................... 6

Fed. R. Civ. P. 9(b) ................................................................................... 16

**REGULATIONS**

12 C.F.R. § 545.2 ........................................................................................ 7

12 C.F.R. § 560 ........................................................................................... 6

12 C.F.R. § 560.2(a) ................................................................................... 7

12 C.F.R. § 560.2(b) ........................................................................... 8, 9, 11

12 C.F.R. § 560.2(b)(4) .............................................................................. 8

12 C.F.R. § 560.2(b)(4), (10) .............................................................. 10, 11

12 C.F.R. § 560.2(b)(10) ............................................................................ 8

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

**OTHER AUTHORITIES**

2

9 Witkin, *Summary of Cal. Law,* Corporations § 198 (10th ed. 2005) ..................... 8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

Plaintiffs are daughters of a borrower who originally obtained a loan from Wells Fargo's predecessor.  While in the middle of a trial loan modification, the borrower passed away in December 2012.  As a matter of basic contract law, a pending offer to modify is terminated upon the death of the offeree-borrower.  Thus, the unconsummated loan modification attempt terminated on the borrower's passing.  Nevertheless, plaintiffs in their personal capacities, on behalf of the Estate, and on behalf of the property–owning trust, bring this case for damages regarding the uncompleted modification attempt.  The complaint is deficient for numerous reasons including standing, the unenforceability of an unconsummated modification, and Home Owners' Loan Act preemption of state law claims.

For reasons fully briefed below, the Court should grant the motion to dismiss without leave to amend.

## 2.   SUMMARY OF THE COMPLAINT

**A.    The Loan And Merger Of World Savings Into Wells Fargo.**

In October 2007, Lorraine Poyorena ("Lorraine") obtained a loan from World Savings Bank, FSB, for $598,500.00 (the "Loan").  (Request for Judicial Notice ("RJN") Exh. A, Note; Comp. ¶6.)  The Loan was secured by a deed of trust recorded against real property commonly known as 13611 Philadelphia Street, Whittier, California  (the Property").  (Comp. ¶¶1, 6; RJN Exh. B, Deed of Trust.)

In January 2008, World Savings Bank, FSB, changed its name to Wachovia Mortgage, FSB, which then converted and merged with Wells Fargo Bank, N.A. in November 2009.[1]  (RJN Exh. C, D, E, F, G.)  Case law establishes that Wells Fargo is the legal successor to World Savings.  *Taguinod v. World Sav. Bank, FSB*,

---

[1]  Reference to "Wells Fargo" in this motion shall include the predecessor entities Wachovia Mortgage, FSB and World Savings Bank, FSB.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   755 F. Supp. 2d 1064, 1068 (C.D. Cal. Dec. 2, 2010) ("Wells Fargo's acquisition of
2   World Savings Bank, FSB does not affect the HOLA preemption defense because
3   the Complaint only addresses the transaction between Plaintiffs and World Savings
4   Bank, FSB."); *Guerrero v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 96261,
5   *8 (C.D. Cal. Sept. 14, 2010) ("Where a national association, such as [Wells Fargo
6   Bank, N.A.], acquires the loan of a federal savings bank, it is proper to apply
7   preemption under HOLA.")

8   **B.     Wells Fargo Offers A Loan Modification Trial Period Plan (TPP) To**
9           **Lorraine Poyorena.**

10          In January 2011, Lorraine suffered financial difficulty.  (Comp. ¶7.)  After
11  speaking with Wells Fargo, Lorraine applied for a Loan modification.  (Comp. ¶7.)
12  In October 2012, Wells Fargo extended a trial period plan ("TPP") under the Home
13  Affordable Modification Program ("HAMP").  (Comp. ¶12, Exh. 1.)  Among other
14  terms and conditions, the TPP required Lorraine to timely make three payments:
15  (1) $1,966.00 by 12/1/12, (2) $1,966.00 by 1/1/2013, and (3) $1,966.00 by
16  2/1/2013.  (Comp. Exh. 1.)  Lorraine made the first TPP payment, then became ill
17  and passed away on December 15, 2012.  (Comp. ¶14.)  By grant deed dated
18  December 12, 2012, and recorded on January 18, 2013, Lorraine transferred title to
19  the Property to the Lorraine G. Poyorena Trust (the "Trust").  (RJN Exh. H.)

20          Plaintiffs Hannah Poyorena ("Hannah") and Sarah Rebekah Fiorito a/k/a
21  Amy Fiorito ("Fiorito") claim to be Trust beneficiaries, with Hannah as successor
22  trustee.  (Comp. ¶¶2, 3.)  The complaint alleges that the final two TPP payments
23  were made timely after Lorraine's passing.  (Comp. ¶16.)  On February 4, 2013,
24  Wells Fargo extended a Permanent Modification offer to Lorraine.  (Comp. ¶17,
25  Exh. 2.)  The complaint does not allege that Wells Fargo had any knowledge of
26  Lorraine's passing when it extended the Permanent Modification offer.  The
27  Permanent Modification offer consisted of two documents – a February 4, 2013
28  cover letter and a Home Affordable Modification Agreement – both directed to

1   Lorraine Poyorena who, unbeknownst to Wells Fargo, was deceased at the time of

2   the offer. (Comp. ¶14, Exh. 2.)  Among other things, the cover letter instructed that

3   "To accept this offer, you (Lorraine) must sign and return both copies of the

4   Modification Agreement . . .  by February 18, 2013."  (Comp. Exh. 2.)  Further, the

5   offered Modification Agreement included the following terms and conditions:

6       •    It is between Lorraine Poyorena as borrower and Wells Fargo as

7   lender;

8       •    "Representations" (at Section 1) that Lorraine is "experiencing a

9   financial hardship," that she lives in the Property as her primary residence, and that

10   she has made the TPP payments;

11       •    "Acknowledgments and Preconditions to Modification" (at Section 2)

12   that the Loan will not be modified if the Representations in Section 1 "are no

13   longer true," and the Loan will not be modified until the Lender returns a signed

14   copy of the Modification Agreement;

15       •    The "Modification" (at Section 3) confirms that the Loan will only be

16   modified if the Representations "continue to be true in all material respects and all

17   preconditions . . .  have been met." (Comp. Exh. 2.)

18   **C.   Hannah Poyorena Attempts To Accept the Loan Modification Offer**

19         **Made To Lorraine Poyorena.**

20       Prior to February 18, 2013, Hannah executed the Modification Agreement

21   by crossing out Lorraine Poyorena and writing in "Hannah Lisa Marie Poyorena."

22   (Comp. ¶18, Exh. 2.)  The complaint does not allege that Wells Fargo ever

23   extended the modification offer to Hannah, a non-borrower.  In February and

24   March 2013, Wells Fargo requested documents to show that the Trust owned the

25   Property and that Hannah was the correct person to communicate with on the

26   Loan. (Comp. ¶19.)  The complaint alleges that in April 2013, Wells Fargo

27   acknowledged Hannah as successor trustee and that Wells Fargo representative

28   Amanda Lampkin informed Hannah that Wells Fargo would "proceed" with a

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  Permanent Modification.  (Comp. ¶21.)  Hannah Poyorena then returned another

2  version of the Modification Agreement to Wells Fargo signed by Hannah as

3  "successor trustee" on April 29, 2013.  (Comp. Exh. 3.)  After submitting the

4  updated Modification Agreement in April, Wells Fargo informed Hannah that the

5  paperwork was "being reviewed."  (Comp. ¶23.)  Hannah tendered $5,898.00

6  toward the Loan payments to Wells Fargo. (Comp. ¶23.) Nowhere does the

7  complaint allege that Wells Fargo solicited those payments.  Ultimately in July

8  2013, Wells Fargo sent a letter advising Hannah that she did not qualify for HAMP

9  and it could not move forward with the modification.  (Comp. ¶24.)

10      Based on these allegations, plaintiffs purport to bring claims individually

11  and on behalf of the Estate of Lorraine Poyorena for: (1) negligent

12  misrepresentation, (2) negligence/negligent infliction of emotional distress, (3)

13  relief under California Business & Professions Code §17200, and (4) promissory

14  estoppel.

15  **3.    THE COMPLAINT SUFFERS FROM STANDING AND OTHER**

16  **DEFECTS REGARDING NAMED PLAINTIFFS.**

17      It is axiomatic that Article III standing includes a "general prohibition on a

18  litigant's raising another person's legal rights."  *Allen v. Wright*, 468 U.S. 737,

19  750-751 (1984).  In violation of that prohibition, plaintiffs' complaint attempts to

20  assert rights by parties that are not even arguably aggrieved by the conduct at issue.

21      First, plaintiff Hannah Poyorena purports to bring suit on behalf of the Estate

22  of Lorraine G. Poyorena.  (Comp. at p. 2:25.)  Yet, the complaint alleges that

23  Lorraine transferred the Property to the Trust before she passed away in December

24  2012.  (Comp. ¶14.)  Property that is transferred to a Trust does not become the

25  property of, or an asset of, a later-established estate. *Estate of Heigho*, 186 Cal.

26  App. 2d 360, 364-365 (1960) ("Property which the decedent in his lifetime

27  transferred by valid conveyance is no longer a part of his estate" (quoting 20

28  Cal.Jur.2d, Executors and Administrators, § 435, p. 636)); *Estate of Baird*, 135

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  Cal. App. 2d 333, 341 (1955).  Because Lorraine's Estate has no interest in the

2  subject Property, claims regarding the Property are not properly brought by the

3  Estate.  Therefore, all claims to the extent pursued by the Estate should be

4  dismissed.  (The Lorraine G. Poyorena Trust is attached to the RJN as Exh. I.)

5       Second, the complaint also appears to assert claims by Hannah and Fiorito as

6  Trust beneficiaries.  (Comp. ¶¶2, 3.)  However, a trust beneficiary cannot bring

7  direct claims.  Thus, "where a cause of action is prosecuted on behalf of an express

8  trust, the trustee is the real party in interest because the trustee has legal title to the

9  cause. The corollary to this rule is that the beneficiary of a trust generally is not the

10  real party in interest and may not sue in the name of the trust." *Pillsbury v.*

11  *Karmgard*, 22 Cal. App. 4th 743, 753-754 (1994).  In fact, a beneficiary lacks

12  ownership of claims affecting the trust as "his or her right to sue is ordinarily

13  limited to the enforcement of the trust, according to its terms." *Id*.  The trust

14  beneficiary's ability to sue in that capacity is limited to a suit against a trustee for

15  breach of trust or a suit against a third party who benefitted from the trustee's

16  breach of trust.  *Estate of Bowles*, 169 Cal. App. 4th at 691-692.  Here, it appears

17  that both Hannah and Fiorito are asserting claims as Trust beneficiaries. (Comp.

18  ¶¶2, 3.)  Those claims must be dismissed as the Trust beneficiaries lack standing to

19  bring direct claims for matters allegedly affecting the legal rights of the Trust.

20       Third, to the extent that Hannah and Fiorito bring claims individually, and

21  entirely divorced from the Trust, they cannot meet standing requirements as any

22  allegation of harm relating to the Property or the Loan could only be claimed by

23  the Trust as the Property owner.  Allowing Hannah or Fiorito to proceed in some

24  individual capacity, as unrelated to the title-owning Trust, would violate the rule

25  that a litigant cannot raise another's legal rights.  *Allen, supra,* 468 U.S. at 750-

26  751.  Wells Fargo also notes that the complaint lacks any factual allegations

27  whatsoever regarding Fiorito, thereby failing to state a claim in satisfaction of the

28  plausibility standard adopted in *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009) and

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Fed. R. Civ. P. 8.

2  In sum, at most, the only possible plaintiff that might proceed in this action

3  from a standing perspective would be Hannah on allegations that she is the

4  successor trustee of the Trust, which in turn holds title to the Property.  *Estate of*

5  *Bowles*, 169 Cal. App. 4th 684, 691 (2008) ("As a general rule, the trustee is the

6  real party in interest with standing to sue and defend on the trust's behalf.")  As

7  such, all claims should be dismissed as asserted by (i) the Estate, (ii) Hannah and

8  Fiorito, solely in their personal capacities, and (iii) Hannah or Fiorito as alleged

9  Trust beneficiaries.

10  **4.   THE HOME OWNERS' LOAN ACT PREEMPTS PLAINTIFFS'**

11  **STATE LAW CLAIMS.**

12  **A.   As A Federally-Chartered Savings Bank, World Savings Bank, FSB**

13  **Operated Under HOLA**

14  All of plaintiffs' claims against Wells Fargo are preempted by the Home

15  Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq*., and its implementing

16  regulations, including 12 Code of Federal Regulations ("CFR") § 560, as

17  promulgated by the Treasury Department's Office of Thrift Supervision ("OTS").

18  At the time of Loan origination, Wells Fargo's predecessor (World Savings

19  Bank, FSB) was a federally-chartered savings bank, organized and operating under

20  HOLA.  The Loan documents confirm that the Note and Deed of Trust are

21  governed by HOLA.  (RJN Exh. A at ¶12, Exh. B at ¶15 ("[t]his Security

22  Instrument and the Secured Notes shall be governed by and construed under

23  federal law and federal rules and regulations, *including those for federally*

24  *chartered savings institutions. . . .*") [emphasis added].)  As explained above,

25  World Savings later changed its name to "Wachovia Mortgage, FSB" and

26  subsequently merged into "Wells Fargo Bank, N.A."  Attached to the RJN are true

27  and correct copies of government records evidencing the OTS' governance of the

28  original lender and the merger into Wells Fargo (RJN, Exhs. C - G).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**B.** **Regulations Promulgated By The OTS Preempt Any State Law That Affects Lending**

Under HOLA, the OTS was granted power, "under such regulations as [it] may prescribe – to provide for the organization, incorporation, examination, operation, and regulation of…Federal savings associations…" 12 U.S.C. § 1464(a).  The OTS is thus authorized "to prescribe a nationwide system of operation, supervision, and regulation which would apply to all federal associations." *Glendale Fed. Sav. & Loan Ass'n v. Fox*, 459 F. Supp. 903, 909 (C.D. Cal. 1978).

OTS regulations are "preemptive of any state law purporting to address the subject of the operations of a federal savings association." 12 C.F.R. § 545.2.  The "OTS hereby occupies the entire field of lending regulation for federal savings associations…" and a federal savings bank, "may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities." 12 C.F.R. § 560.2(a).[2]  Furthermore, the courts are quite clear that the HOLA regulations are "pervasive":

> We have described HOLA and its following agency regulations as …
> so pervasive as to leave no room for state regulatory control.
> [B]ecause there has been a history of significant federal presence in
> national banking, the presumption against preemption of state law is
> inapplicable.

---

[2]  Indeed, case law casts a wide net over claims preempted by HOLA.  In *Bank of America v. City & County of San Francisco*, 309 F.3d 551, 558 (2002), the Court noted:  "[S]ince the passage of the HOLA in 1933, OTS regulations have governed the 'powers and operations of every federal savings and loan association from its cradle to its corporate grave.'"  The Supreme Court has noted that, "[i]t would have been difficult for Congress to give the [OTS] a broader mandate." *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159-160 (1982).

1   *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1004-1005 (9th Cir. 2008).

2   **C.      State Laws Preempted by HOLA**

3          12 C.F.R. § 560.2(b) provides for preemption of state laws that purport to

4   impose upon a federal savings bank and their successors[3] any requirements

5   regarding:

6   - **The terms of credit, including** amortization of loans

7       and the deferral and capitalization of interest and

8       **adjustments to the interest rate, balance, payments**

9       **due**, or term to maturity of the loan, including the

10      circumstances under which a loan may be called due

11      and payable upon the passage of time or a specified

12      event external to the loan; 12 C.F.R. § 560.2(b)(4)

13  - **Processing**, origination, **servicing**, **sale** or purchase

14      **of**, or investment or participation in, **mortgages**; …

15      12 C.F.R. § 560.2(b)(10) (emphasis added)

16  _____

17  [3]   The application of HOLA applies to the successors of federal savings banks.  See

18  e.g*., Williams v. Wells Fargo Bank, NA,* 2014 U.S. Dist. LEXIS 17215, at *29-*31

    (C.D. Cal. Jan. 27, 2014); *Kaplan v. Wells Fargo Bank N.A.*, 2013 U.S. Dist.

19  LEXIS 109023, at *7, fn. 2 (C.D. Cal. July 30, 2013) ("HOLA preemption

20  continues to apply to loans originated by a federal savings bank even after those

    banks are merged into national banking associations") (quoting *Gorton v. Wells*

21  *Fargo Bank NA*, 2012 U.S. Dist. LEXIS 168158, at *12 (C.D. Cal. Nov. 27,

22  2012)); *Mata v. Wells Fargo Bank, N.A.,* 2013 U.S. Dist. LEXIS 108197, *12

    (C.D. Cal. July 31, 2013) (in finding that HOLA applied to the acts of Wells Fargo,

23  the court noted that:  "Plaintiffs contracted with a Federal Savings Bank. Further,

24  the parties agreed to be bound by such laws under the terms of the trust deed.

    Thus, HOLA preemption applies in this case."); *Guerrero v. Wells Fargo Bank,*

25  *N.A.*, 2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010) (same); *DeLeon v.*

26  *Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1121 (N.D. Cal. June 9, 2010)

    (same); see also, 9 Witkin, *Summary of Cal. Law, Corporations* § 198 (10th ed.

27  2005) (In a merger the surviving entity "succeeds to the rights, property, debts and

28  liabilities, without other transfer.").

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**D.** **The Application of HOLA Preempts Each State Law Claim Against Wells Fargo.**

Preemption under HOLA first questions whether the type of state law appears on the list set forth in 12 C.F.R. § 560.2(b).  If it does, the analysis ends and the state law is preempted.  There is no second step.  *Silvas, supra*, 514 F.3d at 1005.  Any doubt is resolved in favor of preemption.  *Weiss v. Washington Mutual Bank*, 147 Cal. App. 4th 72, 77 (2007).  In determining whether a state law claim falls within 12 C.F.R. § 560.2(b), courts focus on the "functional effect upon lending operations of maintaining the cause of action", rather than the label a plaintiff attaches to the claim.  *Naulty v. GreenPoint Mortg. Funding, Inc*., 2009 U.S. Dist. LEXIS 79250, at *12 (N.D. Cal. Sept. 3, 2009).

Here, plaintiffs bring common-law tort, promissory estoppel, and unfair competition claims on loan modification allegations.  In sum, plaintiffs allege that Wells Fargo extended a HAMP TPP to Lorraine, which she did not complete before passing away in December 2012.  (Comp. ¶¶12, 13, 14.)  After that, plaintiffs allege that Wells Fargo represented to Hannah that it would "proceed" with the modification, told her the paperwork was being "reviewed," and then declined to extend a permanent modification.  (Comp. ¶¶21-24.)

Such claims relating to Loan modifications are routinely preempted because they directly affect lending operations.  In *Gorton v. Wells Fargo,* 2012 U.S. Dist. LEXIS 168158, at *18*20 (C.D. Cal. Nov. 27, 2012), the court found that HOLA preempted a loan modification claim styled as a bad faith breach of contract claim: "Included on the *subsection (b)* list are "state laws purporting to impose requirements regarding … (4) the terms of credit, … including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan."[4]

---

[4] The *Gorton* court also noted that the claim would be preempted under subsection (c): "Moreover, were it not within these confines, the Court would have no

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1      Other cases apply the same reasoning.  In *Sharma v. Wachovia*, 2011 U.S.

2   Dist. LEXIS 1736 (E.D. Cal. Jan. 6, 2011), the plaintiff alleged various state law

3   causes of action against Wachovia Mortgage arising out of, among other things,

4   "Defendant['s] refus[al] to modify the loan."  *Id*. at * 2.  In applying HOLA

5   preemption, the Court ruled: "[b]ecause all of Plaintiffs' state claims involve types

6   of law listed in paragraph 560.2(b), all of Plaintiffs' claims are preempted by

7   HOLA and must be dismissed."  *Id*. at *6; *see also Zarif vs. Wells Fargo Bank,

8   N.A.*, 2011 U.S. Dist. LEXIS 29867, at **8-9 (S.D. Cal. Mar. 23, 2011) ("each of

9   Plaintiffs' claims specifically challenge the processing of Plaintiffs' loan

10  modification application and servicing of Plaintiffs' mortgage, and fall within the

11  specific types of preempted state laws listed in § 560.2(b)(4) & (10))"); *Sato v.

12  Wachovia Mortg., FSB,* 2011 U.S. Dist. LEXIS 75418, at *20 (N.D. Cal. July 13,

13  2011); *Curcio v. Wachovia Mortg. Corp.*, 2009 WL 3320499, at *6 (S.D. Cal. Oct.

14  14, 2009); *Biggins v. Wells Fargo & Co.,* 266 F.R.D. 399, 417 (N.D. Cal. 2009).

15      This case is also similar to *Kaplan v. Wells Fargo Bank N.A.*, 2013 U.S.

16  Dist. LEXIS 109023 (C.D. Cal. July 30, 2013, Feess, J.) where this Court

17  dismissed all loan modification processing claims as HOLA preempted.  In

18  *Kaplan*, plaintiffs brought claims, including promissory estoppel and negligent

19  misrepresentation, on alleged representations that Wells Fargo would "review

20  plaintiffs for [the Home Affordable Modification Program ('HAMP')" and failed to

21  do so.  *Id*. at *8-*9.  The Court concluded that all claims were preempted as

22  "premised on Defendants' alleged misconduct in '[p]rocessing, originat[ing],

23  servicing . . . or participati[ng] in, mortgages'—activities subsection (b) explicitly

24

25  difficulty concluding that the law "affects lending" and that it is not otherwise

26  saved from preemption by any subsection (c) category…  The Court dismisses

    with prejudice Plaintiff's claims based on her attempt to secure a loan

27  modification…. Plaintiff's bad faith claim is preempted by HOLA."  *Id*., at *20.

28

1  identifies as subject to HOLA preemption."  Id. at *9; 12 C.F.R. § 560.2(b).  Like

2  *Kaplan*, each of plaintiffs' claims necessarily involve the processing and servicing

3  of a mortgage and the terms of credit.  12 C.F.R. § 560.2(b)(4), (10).  As such, the

4  Court should grant Wells Fargo's motion to dismiss without leave to amend as all

5  claims are barred by HOLA preemption.

6  **5.  <u>EACH CLAIM RUNS AFOUL OF WELL-ESTABLISHED CASE LAW</u>**

7  **<u>THAT HAMP IS NOT PRIVATELY ACTIONABLE.</u>**

8       All claims purport to seek relief based on HAMP Loan modification activity.

9  (Comp. ¶¶12-24.)  Such claims infringe on well-established case law that HAMP is

10  not privately actionable.  *E.g.*, *Hoffman v. Bank of America, N.A.*, 2010 U.S. Dist.

11  LEXIS 70455, at *15 (N.D. Cal. June 30, 2010) (" lenders are not required to make

12  loan modifications for borrowers that qualify under HAMP; nor does the servicer'

13  s agreement confer an enforceable right on the borrower" ); *Villa v. Wells Fargo*

14  *Bank, N.A.*, 2010 U.S. Dist. LEXIS 23741, at **6-7 (S.D. Cal. Mar. 15, 2010) ("

15  [T]he HAMP agreement did not require loan servicers to modify eligible loans;

16  thus, the court found borrowers lacked standing to enforce the agreement." ).

17       Plaintiffs here attempt an end-around HAMP's lack of private enforceability

18  by seeking damage from HAMP modification activity under the guise of state law.

19  Such claims are nothing more than a veiled attempt to enforce HAMP, while

20  disregarding the lack of a private right of action.  In *Torres v. Litton Loan*

21  *Servicing LP*, 2011 U.S. Dist. LEXIS 4616, at *2 & *5-*6 (E.D. Cal. Jan. 18,

22  2011), the court dismissed a wrongful foreclosure claim premised on allegations

23  that defendant "did not comply with certain provision of the Home Affordable

24  Modification Plan ('HAMP')."  The court ruled that "there is no private right of

25  action under HAMP."  *Id.* at *5.  Similarly, in *Aleem v. Bank of Am.*, 2010 U.S.

26  Dist. LEXIS 11944, *8-*9 & *12-*13 (C.D. Cal. Feb. 9, 2010), the court

27  dismissed, with prejudice, state law claims for wrongful foreclosure, unfair

28  competition, and unjust enrichment as predicated on non-actionable HAMP issues.

<div style="writing-mode: vertical-rl">ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP</div>

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    The court held: "to the extent Plaintiffs' UCL claim is based upon the National

2    Housing Act or HAMP, Plaintiffs have failed to state a claim." *Id*. at \*10.

3         Plaintiffs' entire complaint is premised on a grievance that Wells Fargo did

4    not extend a permanent HAMP modification to the Trust after Lorraine's passing.

5    (Comp. ¶¶24, 48, 60.)  That theory fails by seeking relief vis-à-vis a HAMP

6    modification where no private right of action exists. For these reasons, the Court

7    should dismiss each claim in the complaint without leave to amend.

8    **6.    EACH CLAIM FAILS BECAUSE THE MODIFICATION OFFER TO**

9         **LORRAINE TERMINATED ON HER PASSING, AND A**

10        **CONTRACT CANNOT BE MODIFIED BY A NONPARTY.**

11        Plaintiffs' complaint also erroneously posits that the Loan modification

12   activity resulted in an enforceable agreement.  (Comp. ¶34.)  As Lorraine passed

13   away after making only the first of three TPP payments, no Loan modification was

14   even arguably consummated while she was alive.  (Comp. ¶¶13, 14.)  Because

15   Lorraine was unable to finalize a modification before she passed, plaintiffs cannot

16   recover on any modification-related claim.

17        Initially, an extended offer terminates on death of the offeree.  *Estate of*

18   *Watts*, 162 Cal. App. 3d 1160, 1164 (1984).  The TPP offered to Lorraine states

19   that "you must make the following trial period payments in a timely manner."

20   (Comp. Exh. 1; emphasis in original.)  As conceded in the complaint, Lorraine

21   made the first payment and then Hannah allegedly made the other two payments

22   after Lorraine's passing.  (Comp. ¶¶13-16.)  Yet, the complaint does not allege any

23   facts that would allow Hannah to perform on a TPP extended to Lorraine.  An

24   alleged successor does not have automatic authority to take over an outstanding

25   contract offer when the offeree passes away.  To the contrary, "[i]t is a well-

26   established principle of contract law that death of an offeree terminates a revocable

27   offer so that any subsequent acceptance by the offeree's administrator is

28   ineffective."  *Id*. at 1163.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Relatedly, because of Lorraine's passing, she had no ability to satisfy the

2   preconditions to modification as stated in the TPP (Comp. Exh. 1).  For example,

3   Lorraine did not make the second two TPP payments.  The TPP also required

4   Lorraine to submit required documents to Wells Fargo after making all three

5   payments. (Comp. Exh. 1.)  Yet, Lorraine's submission of required documents

6   was a legal impossibility given her passing after the first payment.

7   The same holds true for conditions in the permanent modification offer that

8   Wells Fargo extended to Lorraine in February 2013.[5]  (Comp. Exh. 2.)  That offer

9   was an immediate nullity since the offeree was not alive at the time that Wells

10  Fargo extended the offer.  *Estate of Watts*, *supra*, 162 Cal. App. 3d at 1164.  Wells

11  Fargo further notes that the conditions stated in the permanent modification also

12  failed for legal impossibility.  Thus, the offered permanent modification was

13  between Wells Fargo and Lorraine, yet she could not accept the offer after her

14  passing. (Comp. Exh. 2.)  Moreover, the permanent modification required the

15  continuing truth of certain representations, namely that Lorraine had a financial

16  hardship, that she continued to live at the Property as her primary residence and

17  that she (not someone else) made the TPP payments.  (Comp. Exh. 2 at Sections 1,

18  2, 3.)  None of those representations were true when Wells Fargo sent out the

19  permanent modification offer.  Because the conditions to modification were a legal

20  impossibility, Wells Fargo was under no binding obligation to modify the Loan.

21  Finally, plaintiffs had no legal ability to accept the permanent modification

22  offer extended to Lorraine. "It is equally elementary that an offer to contract is not

23  assignable, it being purely personal to the offeree." *Grieve v. Mullaly*, 211 Cal. 77,

24  79 (1931).  And nowhere does the complaint allege that the Trust or anyone else

25  executed an assumption of the Loan with Wells Fargo.  Pursuant to the terms of the

26

27

28

---

[5]  Nowhere do plaintiffs allege that Wells Fargo had any knowledge of Lorraine's passing at the time it sent out the permanent modification offer to her.

deed of trust, the Loan could only be modified by "an agreement in writing signed by Borrower and Lender."  (RJN Exh. B.)  The Borrower was Lorraine, not anyone else.  (RJN Exh. B at p. 1, "Borrower.  Lorraine Poyorena.")  Thus, until Wells Fargo reached an agreement to allow someone else to become the "Borrower," i.e. an assumption, then no one else could legally consummate a modification.  Because the complaint does not allege any Loan assumption, each claim fails as erroneously predicated on the existence of an enforceable permanent modification.  *Ashby v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 69693 (S.D. Tex. May 18, 2012) (plaintiff did not automatically assume loan on inheritance of property).

## 7.   THE TWO NEGLIGENCE CLAIMS FAIL ON NUMEROUS GROUNDS, INCLUDING THE LACK OF A DUTY OF CARE (FIRST AND SECOND CLAIMS).

### A.   The Weight Of Authority Confirms That Wells Fargo Owed No Duty Of Care In Processing A Loan Modification Application.

Negligence-based claims all require a duty of care.  *Badame v. JP Morgan Chase Bank*, N.A., 2014 U.S. Dist. LEXIS 22164, at *18 (C.D. Cal. Feb. 13, 2014); *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989).  "The determination of whether a duty exists is primarily a question of law."  *Eddy v. Sharp*, 199 Cal. App. 3d 858, 864 (1988).  "[A]bsent a duty, the defendant' s care, or lack of care, is irrelevant."  *Software Design and Application Ltd. v. Hoeffer & Arnolt Inc.*, 49 Cal. App. 4th 472, 481 (1996).  In *Nymark v. Heart Fed. Savs. & Loan Ass' n*, the court explained: " [A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  231 Cal. App. 3d 1089, 1096 (1991).  Indeed, "[l]iability to a borrower for negligence arises only when the lender ' actively participates'  in the financed enterprise ' beyond the domain of the usual money lender.' "  *Id.*

14

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    Here, the conduct at issue concerned loan modification processing –

2  a routine lending activity.  *See Graybill v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist.

3  LEXIS 34322, at *50-*51 (N.D. Cal. Mar. 12, 2013) (dismissing negligence claim

4  on argument that Wells Fargo owed duty of care in processing modification

5  application); *Armstrong v. Chevy Chase Bank, FSB*, 2012 U.S. Dist. LEXIS

6  144125, *11-12 (N.D. Cal. Oct. 3, 2012); *Sullivan v. JP Morgan Chase Bank, NA*,

7  725 F. Supp. 2d 1087, 1094 (E.D. Cal. 2010) (citing *Nymark* and holding that "

8  [p]laintiffs have provided no authority to support their argument that lenders owe

9  borrowers a duty of care not to misinform them about the loan modification

10  process" ); *Gonzales v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 154851 at

11  *20 (N.D. Cal. Oct. 29, 2012); *Settle v. World Savings Bank, FSB*, 2012 U.S. Dist.

12  LEXIS 4215, at *24 (C.D. Cal. Jan. 11, 2012) ("Numerous cases have

13  characterized a loan modification as a traditional money lending activity,

14  warranting application of the rule articulated in *Nymark v. Heart Fed. Savings &*

15  *Loan Ass' n*, 231 Cal.App.3d 1089, 283 Cal. Rptr. 53 (1991), that a financial

16  institution in general owes no duty of care to a borrower.").[6]

17    The argument for a duty of care is even more attenuated for plaintiffs who

18  seek relief for non-borrowers and strangers to Wells Fargo –  namely, the Trust and

19  Hannah or Fiorito in their personal capacities.  California law has long held that

20  "[a]bsent extraordinary and specific facts, a bank does not owe a duty of care to a

21  noncustomer."  *Software Design and Application, supra*, 49 Cal. App. 4th at 479,

22  481.  The absence of a duty of care to non-customers extends to negotiation with

23  non-customers and loan commitment dealings.  *Laks v. Coast Fed. Sav. & Loan*

24

25

_____

26  [6]  The case of *Jolley v. Chase Home Finance, LLC,* 213 Cal. App. 4th 872 (2013) is

27  readily distinguishable as it involved a construction loan where the lender often
    plays an ongoing role in the construction enterprise. *Deschaine v. IndyMac Mortg.*

28  *Servs.*, 2013 U.S. Dist. LEXIS 163203, at *18 (E.D. Cal. Nov. 15, 2013).

*Assn.*, 60 Cal. App. 3d 885, 888-889, 892-893(1976); s*ee also, Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Assn.*, 52 Cal. App. 3d 484, 486-489 (1975).  The foregoing case law confirms that a third party, non-borrower cannot allege a claim for negligence against a bank.  *Guralnik v. MBNA Am. Bank, N.A.*, 2005 U.S. Dist. LEXIS 33717, at *4 (N.D. Cal. Aug. 31, 2005) ("As a third party noncustomer, Mr. Guralnik may not maintain a negligence claim based on the account at issue in this case.").

For all of the reasons discussed above, and because plaintiffs cannot establish a duty of care, the negligence claims cannot survive.  *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 57-60 (1998).

**B.    As To Negligent Misrepresentation, The Complaint Lacks Allegations Supporting A False Representation And Justifiable Reliance.**

Negligent misrepresentation is merely a species of fraud that requires a particularized pleading of: (i) a false representation as to a material fact, (ii) knowledge of its falsity, (iii) intent to defraud, (iv) actual and justifiable reliance upon the misrepresentation, and (v) damage resulting from that justifiable reliance.  *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 72-73 (1990).

First, plaintiffs fail to plead a false representation of material fact with the the requisite specificity.  Fed. R. Civ. P. 9(b). The complaint references a conversation in April 2013 where Wells Fargo allegedly said that it would "proceed" with a permanent modification.  (Comp. ¶21.) The word "proceed," taken in context, is ambiguous at best.  Wells Fargo then advised that the "paperwork was being reviewed," and thereafter denied the permanent modification to Hannah in July 2013.  (Comp. ¶¶21-24.)  "Plaintiffs must not only specify how alleged statements were false, but must specify how statements were false when they were made."  *Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 U.S. Dist. LEXIS 42333, *16 (E.D. Cal. Apr. 18, 2011).  Plaintiffs fail to specify how the April 2013 statement was false when made.  Moreover, a statement that Wells

1    Fargo would "proceed" did not guarantee a final modification, especially when

2    read with the accompanying communications that the file was "under review."  In

3    these circumstances, the complaint lacks any false representation of material fact

4    sufficient to support a misrepresentation claim.

5    Second, a representation as to a future event is not actionable.  "To be

6    actionable, a negligent misrepresentation must ordinarily be as to past or existing

7    material facts.  Predictions as to future events, or statements as to future action by

8    some third party, are deemed opinions, and not actionable fraud."  *Tarmann v.*

9    *State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991).  In *Tarmann*, the

10   defendants' representative " said it would pay for her repairs immediately upon

11   their completion… "  *Id*. at 158.  The court held this did not " involve a past or

12   existing material fact"; rather, it involved "a promise to perform at some future

13   time."  *Id*.  Like *Tarmann*, the statement that Wells Fargo would "proceed" on a

14   permanent modification was at most an ambiguous statement about a future event

15   that fails to qualify as a "false representation of material fact."

16   Third, plaintiffs fail to plead justifiable reliance.  Plaintiffs allege that they

17   refrained from seeking other forms of foreclosure alternatives, such as marketing

18   the Property.  (Comp. ¶35.)  Considering that Wells Fargo could not as a matter of

19   law consummate a modification with Lorraine after her passing, and that it advised

20   Hannah that her attempt to modify the Loan was "being reviewed," plaintiffs have

21   not alleged any justifiable reliance on the supposed promise of a Loan

22   modification.  Moreover, the complaint also fails to explain what prevented

23   plaintiffs from marketing the Property after learning that the Loan would not be

24   modified in July 2013.  (Comp. ¶36.)  As such, the negligent misrepresentation

25   theory also fails for lack of justifiable reliance.

26   **C.    Emotional Distress Recovery Fails On Numerous Grounds.**

27   Plaintiffs impermissibly seek to recover for emotional distress in the second

28   claim.  To the extent that plaintiffs seek emotional distress damage allegedly

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   suffered by Lorraine (Comp. ¶54), such claims are extinguished on death and

2   cannot be pursued.  Cal. Civ. Proc. Code § 377.34; *Parker v. Dean Transp.*, Inc.,

3   2013 U.S. Dist. LEXIS 184386, at *33, fn. 16 (C.D. Cal. Oct. 15, 2013)

4   ("Plaintiff's claim for emotional distress does not survive his death.").

5       To the extent that plaintiffs seek emotional distress on behalf of the

6   Property-owning Trust, a trust cannot recover for emotional distress.  *Caso v.*

7   *Hartford Cas. Ins. Co.*, 2008 U.S. Dist. LEXIS 36428, at *14-*15, fn. 9 (E.D. Cal.

8   May 2, 2008) ("a legal entity such as a trust cannot suffer emotional distress.").

9   Regarding Hannah and Fiorito in their personal capacities, the complaint lacks any

10  nexus between the Property, a Loan modification, and beneficiaries of a Trust that

11  lack standing to sue.  As to Fiorito, the complaint also lacks any allegations that

12  she had any communications with Wells Fargo whatsoever.  Even if plaintiffs

13  could somehow bring emotional distress claims in their personal capacity, which

14  they cannot, California law only authorizes recovery for negligent infliction of

15  emotional distress in cases of physical injury. *See Branch v. Homefed Bank*, 6 Cal.

16  App. 4th 793, 800, 8 Cal. Rptr. 2d 182 (1992); *Butler-Rupp v. Lourdeaux*, 134 Cal.

17  App. 4th 1220, 1226 (2005).  Since plaintiffs raise no allegations of physical

18  injury, the attempt to recover for emotional distress must be denied.

19  **D.     The Complaint Lacks Sufficient Causation And Damage Allegations On**

20  **The Mere Acceptance Of Loan Payments.**

21      The two negligence claims fail for a lack of damage.  At Comp. paragraph

22  37, plaintiffs include a laundry list of damage theories, none of which are viable.

23      Starting with the proposition that Wells Fargo had no legal obligation to

24  modify the Loan (section 5, above), any claimed damage based on the absence of a

25  modification must be rejected.  That covers almost all of the damage theories

26  advanced in paragraph 37 (Loan fees, inability to refinance, inability to sell the

27  Property, inability to secure lines of credit, inability to obtain a loan modification,

28  danger of losing the Property and rental income).  Wells Fargo had no obligation to

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   modify the Loan and the deed of trust provides for foreclosure in the event of a

2   default.  (RJN Exh. B at ¶28.)

3       The only remaining damage theory is that Hannah allegedly made payments

4   on the Loan totaling $11,796.00, two payments under the TPP, and then $5,898.00

5   in April 2013.  (Comp. ¶¶16, 22.)  Regarding the two TPP payments, there is no

6   allegation that Wells Fargo knew Lorraine was deceased when those payments

7   came in.  Regarding the April payment, there is no allegation that Wells Fargo

8   solicited that payment from Hannah, which she apparently made voluntarily.  The

9   Trust cannot claim any damage as those payments were applied to the Loan and

10  against the debt owed on the Property, a Trust asset as of December 2012.

11  Additionally, case law confirms that the acceptance of loan payments under a pre-

12  existing loan, and even in connection with a loan modification attempt, will not

13  support an actionable claim.  In *Newgent v. Wells Fargo Bank, N.A.*, 2010 U.S.

14  Dist. LEXIS 18476, at *17 (S.D. Cal. Mar. 2, 2010), the Court rejected recovery on

15  allegations that plaintiff "made a payment that she would not have made if she did

16  not believe Wells Fargo was renegotiating her mortgage."  In dismissing claims for

17  fraud, conversion and promissory estoppel, the court held that the payment cannot

18  be considered damage since Wells Fargo was not under "any obligation to

19  restructure her loan."  *Id.* at * 18; *see also, Lawther v. OneWest Bank, FSB*, 2012

20  U.S. Dist. LEXIS 12062 (N.D. Cal. Feb. 1, 2012).

21      Lastly, Wells Fargo was required to accept Loan payments from the Trust

22  under federal law.  Pursuant to the Garn-St. Germain Depository Institutions Act, a

23  lender cannot invoke a due on transfer clause when the transfer is to a family trust

24  or results from the death of the borrower. 12 U.S.C §1701j-3(d).  The corollary of

25  course is that under Garn-St. Germain a lender must accept payments following an

26  exempted transfer.  *See e.g., Ballard v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS

27  159428, at *24-*25 (S.D. W. Va. Nov. 7, 2013); *Baldin v. Wells Fargo Bank, N.A.*,

28  2013 U.S. Dist. LEXIS 29728,  at *11-*16 (D. Or. Feb. 12, 2013); *In re Saunders*,

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   2008 Bankr. LEXIS 781, at *3, fn. 1 (Bankr. E.D. Pa. Mar. 17, 2008).

2       Thus, Wells Fargo was obligated to accept the very payments that plaintiffs

3   erroneously identify as damage. Plaintiffs cannot reconcile damage recovery with

4   Wells Fargo's Garn-St. Germain obligation to accept payments. Due to the

5   absence of recoverable damage, the Court should dismiss the negligence claims

6   without leave to amend.

7       **8.   PLAINTIFFS ALSO CANNOT RECOVER FOR UNFAIR**

8               **COMPETITION (THIRD CLAIM).**

9       Plaintiffs' claim under Cal. Bus. & Prof. Code § 17200 merely incorporates

10  prior claims and allegations which are deficient for the reasons already briefed

11  above. (Comp. ¶57.)

12      A 17200 claim must state with reasonable particularity the facts showing

13  unlawful, unfair, or fraudulent business acts on the part of the defendant. *Korea*

14  *Supply Company v. Lockheed Martin Corporation*, 29 Cal. 4th 1134, 1143 (2003);

15  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993). To the

16  extent the UCL claim is based on alleged fraud, it must be pleaded with heightened

17  specificity. *Neu v. Terminix Int'l, Inc*., 2008 U.S. Dist. LEXIS 32844, *13-14

18  (N.D. Cal. Apr. 8, 2008).

19      As plaintiffs have no enforceable right to a loan modification and as Wells

20  Fargo considered and denied the modification paperwork submitted by Hannah

21  (Comp. ¶¶23, 24), the complaint fails to state any unlawful, unfair or fraudulent

22  business practice. *Hoffman, supra,* 2010 U.S. Dist. LEXIS, at *15; *Mabry v.*

23  *Superior Court*, 185 Cal. App. 4th 208, 231 (2010).

24      The 17200 claim also fails due to lack of standing. A private litigant

25  asserting a UCL claim must allege that they suffered injury in fact and lost money

26  or property as a result of the unfair competition. Cal. Bus. & Prof. § 17204; *Daro*

27  *v. Superior Court*, 151 Cal. App. 4th 1079, 1098 (2007). Here, there is an absence

28  of any causation of actual loss. *Hall v. Time, Inc*., 158 Cal. App. 4th 847 (2008).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  For reasons briefed in Section 7.D above, the damages claimed do not show actual

2  loss as they merely flow from the Loan default and foreclosure activity allowed by

3  contract.  In similar circumstances, such theories brought as a UCL claim have

4  been dismissed.  *DeLeon v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 8296,

5  at *21 (N.D. Cal. Jan. 28, 2011) ("the facts alleged suggest that Plaintiffs lost their

6  home because they became unable to keep up with monthly payments and lacked

7  the financial resources to cure the default . . . it does not appear that [the bank's]

8  conduct resulted in a loss of money or property.  For this reason, Plaintiffs lack

9  standing to sue under the UCL, and the claim must be dismissed.").

10      For each of the foregoing reasons, the Court should dismiss the third claim

11  under the California unfair competition law without leave to amend.

12  **9.   PLAINTIFFS CANNOT SUPPORT THE PROMISSORY ESTOPPEL**

13  **ELEMENTS (FOURTH CLAIM).**

14      Plaintiffs' final claim for promissory estoppel posits that Lorraine, and then

15  Hannah, would not have made Loan payments but for the supposed promise of a

16  modification.  (Comp. ¶¶86-91.)

17      Promissory estoppel is not a separate claim, but an equitable device that

18  serves as a substitute for consideration in certain cases.  *Raedeke v. Gibralter*

19  *Savings and Loan, Assoc.*, 10 Cal. 3d 665 at 672 (1974).  The elements are:  (1) a

20  promise clear and unambiguous in its terms; (2) reasonable and foreseeable

21  reliance by the party to whom the promise is made; and (3) the party asserting the

22  estoppel must be injured by his reliance.  *Laks v. Coast Fed. Sav. & Loan Assn.*, 60

23  Cal. App. 3d 885, 890 (1976).  "To be enforceable, a promise need be definite

24  enough that a court can determine the scope of the duty and the limits of

25  performance must be sufficiently defined to provide a rational basis for the

26  assessment of damages."  *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 226

27  (2011).  In the context of loan modification, estoppel only applies if the lender

28  leads the borrower to believe that a permanent loan modification was guaranteed.

1    *Nungaray v. Litton Loan Servicing, LP*, 200 Cal. App. 4th 1499, 1505 (2011).

2         Plaintiffs fail to plead a clear and unambiguous promise.  Notably, not even

3    the representation of a modification approval is actionable under a promissory

4    estoppel theory as it lacks a concrete promise.  In *Nastrom v. JPMorgan Chase*

5    *Bank, N.A.*, 2012 U.S. Dist. LEXIS 162958, at *18-*20 (E.D. Cal. Nov. 13, 2012),

6    "Defendant Chase's employees, Ms. Jackson and Mr. Serrano, stated that Plaintiffs

7    met the guidelines or criteria for a loan modification under HAMP."  In dismissing

8    the claim for lack of a clear and unambiguous promise, the court held that "[t]here

9    is no clear promise that Defendant Chase would approve or offer such a loan

10   modification" and "[a]bsent a written agreement to modify the loan, any claim

11   based upon an oral contract to modify the loan is barred by the statute of frauds.

12   *Id.* (citing *Secrest v. Sec. Nat'l Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544,

13   552 (2008)).

14        Here, as to Lorraine, even though Wells Fargo extended a TPP to Lorraine,

15   there was no legal ability to consummate a modification with her as she passed

16   away during the TPP.  (Comp. ¶14.)  As to the Trust, Hannah and Fiorito, Wells

17   Fargo made no concrete promise of a modification on the complaint allegations

18   that it would "proceed" with the modification, followed by a review, and then a

19   denial.  (Comp. ¶¶21-24.)  In such circumstances, promissory estoppel recovery is

20   not available.  *Cabanillas v. Wachovia Mortg.,* 2012 U.S. Dist. LEXIS 39270, at

21   *7-*8 (C.D. Cal. Mar. 20, 2012).

22        Promissory estoppel also fails for lack of reasonable reliance and injury.  As

23   to reliance, case law repeatedly holds that loan payments made in connection with

24   the processing of a modification are not actionable as they were required by a pre-

25   existing contractual obligation.  *Id.* at *8 ("[m]erely performing their loan

26   repayment obligations does not constitute detrimental reliance for purposes of

27   promissory estoppel."); *Newgent, supra*, 2010 U.S. Dist. LEXIS 18476, at *17-*19

28   ("Because Plaintiff was already legally obligated to make payments on her

*ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP*

1    mortgage, the Court concludes that the payment in reliance on the promise that

2    Wells Fargo would delay the trustee's sale was not detrimental.").

3         Further, as briefed above, Wells Fargo was required to continue to accept

4    payments pursuant to the contract terms even after Lorraine's passing under Garn-

5    St. Germain. (Section 7.D, supra.)  Moreover, like *Newgent*, plaintiffs here cannot

6    allege that their supposed reliance on a modification was detrimental because there

7    are no facts suggesting that they "would have been successful in delaying the

8    foreclosure sale, renegotiating her loan, and retaining possession of the home."

9    *Id.*; *Guerrero, supra*, 2010 U.S. Dist. LEXIS 96261, at *12.

10        Finally, regarding injury, damages under promissory estoppel fail for

11   reasons briefed in Section 7.D above.  Like the inability to establish a detrimental

12   reliance, neither the continuing payments made under the Loan nor the natural

13   consequences of a foreclosure from default can support actionable injury.  Those

14   circumstances did not result from a promise regarding a modification, but from the

15   original Loan that the borrower obtained from Wells Fargo.  Promissory estoppel

16   does not exist where the claimed damage was not caused by the supposed promise.

17   *US Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 904 (2005).  For

18   each of these reasons, the Court should dismiss the promissory estoppel claim

19   without leave to amend.

20   **10.  *MCGARVEY V. J.P. MORGAN* IS DISTINGUISHABLE AND DOES**

21   **NOT SUPPORT THE VIABILITY OF AN ACTIONABLE CLAIM.**

22        The somewhat similar case of *McGarvey v. JP Morgan Chase Bank, N.A.*,

23   2013 U.S. Dist. LEXIS 147542, at *1-*5 (E.D. Cal. Oct. 10, 2013) involved

24   allegations of a daughter's attempts to modify a loan originally obtained by her

25   deceased mother.  For numerous reasons, *McGarvey* is distinguishable and does

26   not compel a different result here:

27        •    The motion to dismiss in *McGarvey* did not raise a preemption

28   defense, which is dispositive of all claims here.  (Section 4, supra.)  It is also

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    notable that the *McGarvey* court dismissed the promissory estoppel claim for lack

2    of a clear and unambiguous promise.  *Id*. at *10.

3         •    *McGarvey* is factually distinguishable and therefore does not support

4    a negligence duty or unfair competition in this case.  Critically, the plaintiff in

5    *McGarvey* was the successor trustee under a title-owning trust that had extensive

6    dealings with Chase's predecessor (WAMU) for more than five years following the

7    borrower's death.  In *McGarvey*, plaintiff-successor-trustee notified WAMU of the

8    borrower's passing in 2004, submitted supporting documentation, and then

9    plaintiff proceeded to make payments on the loan for the next <u>five years</u>.  *Id*. at *2.

10   Plaintiff-trustee in *McGarvey* then applied for a loan modification and received a

11   HAMP trial plan before Chase terminated it and sold the property.  *Id*. at *3-*5.

12   The court found that Chase "treated plaintiff as the borrower for some purposes but

13   not others."  *Id*. at *3.   Here, the complaint lacks any allegations showing a long–

14   established course of dealing with the daughter that is comparable to *McGarvey*.

15   Wells Fargo never treated either plaintiff as the borrower and never placed either

16   plaintiff directly into a HAMP trial plan.  In fact, the only dealings alleged in the

17   complaint are that Wells Fargo advised Hannah that it would "proceed" with a

18   modification, advised that the papers were under review, and then issued a denial

19   letter.  (Comp. ¶¶21-24.)  Such allegations cannot be compared to the daughter in

20   *McGarvey* who made five-year's worth of loan payments, applied for and obtained

21   a HAMP trial modification, only to have the property sold at foreclosure.  Because

22   the facts in *McGarvey* are starkly different, *McGarvey* does not support the

23   existence of a viable negligence or UCL claim.

24        •    Regarding negligence, the *McGarvey* court did not have the

25   opportunity to consider some of the authority briefed above that California law

26   rejects a duty of care owed to third parties (Section 7.A, supra).  Moreover, the

27   facts relied on in *McGarvey* to support a duty of care are not present here.  In

28   *McGarvey*, Chase sent modification solicitations to plaintiff after learning that the

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

borrower was deceased.  Here, Wells Fargo did not solicit a modification in plaintiff's name and quickly denied the modification after reviewing Hannah's paperwork.  (Comp. ¶¶21-24.)  The *McGarvey* court also heavily relied on the fact that Chase had placed a non-borrower directly in a HAMP trial plan and therefore assumed a duty of care.  *Id*. at *17-*18.  Here, Wells Fargo did not place plaintiff in any TPP as the prior TPP was terminated on Lorraine's death.  (Section 6, supra.)  *McGarvey* therefore does not even arguably support a negligence duty of care on the facts before this Court.

• Finally, *McGarvey* does not support a viable unfair competition claim. As to standing, the *McGarvey* court did not discuss the wealth of case law that loan payments cannot be considered as an injury in fact, which must be extended to a family trust in light of the Garn-St. Germain requirements.  (Section 7.D, supra.) *McGarvey* predicated the unlawful business practice in part on incorporation of the negligence claim, which cannot stand on the facts in this case.  The *McGarvey* court further found support for unfair and fraudulent conduct on Chase's offer of a TPP directly to plaintiff with knowledge of the borrower's death.  *Id*. at *26-*28. Again, there are no facts here that Wells Fargo placed either plaintiff directly into the HAMP program and then cancelled the modification.  As such, *McGarvey* also fails to support an unfair competition claim.

## 11. <u>CONCLUSION</u>

For all of the reasons briefed above, the Court should grant Wells Fargo's motion to dismiss the complaint without leave to amend.

Respectfully submitted,

Dated:  March 7, 2014

ANGLIN, FLEWELLING, RASMUSSEN,
CAMPBELL & TRYTTEN LLP

By: _____/s/ Jeremy E. Shulman_____
Jeremy E. Shulman
jshulman@afrct.com
Attorneys for Defendant
WELLS FARGO BANK, N.A.

1

**CERTIFICATE OF SERVICE**

2

3          I, the undersigned, declare that I am over the age of 18 and am not a party to
this action.  I am employed in the City of Pasadena, California; my business
address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los

4    Robles Avenue, Suite 600, Pasadena, California  91101-2459.

5          On the date below, I served a copy of the foregoing document entitled:

6    **DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND**

7                                              **AUTHORITIES**

8    on the interested parties in said case as follows:

9

**Served Electronically Via the Court's CM/ECF System**

10

*Attorneys for Plaintiffs:*

11

Penelope P. Bergman

12    Deborah P. Gutierrez
Amanda L. Gray

13    BERGMAN & GUTIERREZ LLP
6100 Center Drive, Suite 1050

14    Los Angeles, California 90045

15    *Tel: 310.893.6200; Fax: 310.988.2930*
Email:

16    *penelope@b-g-law.com*
*deborah@b-g-law.com*

17    *amanda@b-g-law.com*

18

19          I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.  I declare that I am employed in

20    the office of a member of the Bar of this Court, at whose direction the service
was made.  This declaration is executed in Pasadena, California on March 7,

21    2014.

22

Lina Velasquez                            */s/ Lina Velasquez*

23    _____          _____
(Type or Print Name)                     (Signature of Declarant)

24

25

26

27

28

93000/BR1209/00808904-7

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP